IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Phyllis A. Wilson, | ) | C/A No. 3:15-1391-MGL-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Richland County, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, Phyllis A. Wilson, a self-represented litigant, filed this employment action alleging race discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., and age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq., against Defendant Richland County. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 65.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Wilson was advised of the summary judgment and dismissal procedures and the possible consequences if she failed to respond adequately to the defendant's motion. (ECF No. 68.) Wilson filed a response in opposition, (ECF No. 78), and the defendant filed a reply (ECF No. 79). Having carefully considered the parties' submissions and the record in this case, the court concludes that Richland County's motion for summary judgment should be granted.[1]

---

[1] The court notes that Wilson originally filed this action against former Richland County Assessor John Cloyd and current Richland County Assessor Elizabeth McDonald. Wilson's claims against these defendants were dismissed, but Wilson was allowed to amend her Complaint to name Richland County as a defendant. (ECF No. 56.)

Page 1 of 12



## BACKGROUND

The following facts are either undisputed or are taken in the light most favorable to Wilson, to the extent they find support in the record. Wilson, who is African-American, began working at the Richland County Assessor's Office in October 1978. Wilson was hired by Richland County Assessor John Cloyd, who had recently been appointed to his position at the time he hired Wilson. The assessor's office was organized into several sections: commercial and residential appraisal, ownership records, and mapping. Wilson's first position with the assessor's office was in a clerical role in the ownership records section.

In 1990, Cloyd promoted Wilson to the role of assistant supervisor of the ownership records section. Cloyd again promoted Wilson in 2003 to the role of supervisor of the ownership records section following the retirement of the previous supervisor. In 2006, Elizabeth McDonald was appointed to the position of deputy assessor, a role that put her in a direct supervisory capacity over Wilson.

In June 2008, Wilson entered into the "Teacher and Employee Retention Incentive" program ("TERI"). S.C. Code Ann. § 9-1-2210. TERI allows state and local government employees to begin drawing retirement but remain in their positions for five years. At the end of the employee's five-year participation in the program, the employee is required to terminate her employment. See § 9-1-2210(H). Wilson enrolled in the TERI program on June 6, 2008; therefore, her "separation date" was June 6, 2013.

In March 2013, Wilson approached Cloyd to ask whether she could be rehired to her position after her separation date. Cloyd responded he would advertise the position and hire the most qualified applicant. Following her mandatory termination on June 6, 2013, Wilson reapplied for her



former position when it was advertised by the assessor's office. However, Cloyd and McDonald decided not to interview Wilson, and they eventually hired Katie Marr, a white woman who was younger than Wilson.[2]

Wilson filed a charge of discrimination in the Equal Employment Opportunity Commission and the South Carolina Human Affairs Commission alleging she was discriminated against based on her race and age. Both agencies investigated Wilson's allegations and determined that no law was violated when she was not hired for her former position in the assessor's office. The agencies issued right-to-sue letters. This action followed.

**DISCUSSION**

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks and citation omitted). A fact is "material" if proof of its existence or non-existence

---

[2] Wilson was fifty-seven or fifty-eight years old at the time she separated from employment. Marr was thirty-nine years old when she was hired.



would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.    Analysis**

    **1.    Burden Shifting Framework in Employment Discrimination Claims**

Wilson alleges she was not rehired to her former position by the defendant because of her race and age. Title VII provides that it is unlawful for an employer to fail or refuse to hire any individual because of her race or color. 42 U.S.C. § 2000e-2(a). The ADEA makes it unlawful for an employer to fail or refuse to hire any individual because of her age. 29 U.S.C. § 623(a)(1).

A plaintiff asserting a claim of unlawful employment discrimination may proceed through two avenues of proof. First, she may attempt to prove discrimination with direct or circumstantial evidence. For claims of race discrimination under Title VII, she must show that race was a



motivating factor in the decision that adversely affected her. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004) (*en banc*), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013). Such proof includes "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Id. (quoting Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995)). "[A] plaintiff must demonstrate that a 'protected trait . . . actually played a role in the [] decisionmaking process and had a determinative influence on the outcome.'" Worden v. SunTrust Banks, Inc., 549 F.3d 334, 342 n.7 (4th Cir. 2008) (quoting Hill, 354 F.3d at 286). To directly establish a claim of discrimination under the ADEA, a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009). In other words, age must be the reason that the employer decided to act. Id. (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).

Alternatively, when direct proof is lacking, a plaintiff may proceed under the McDonnell Douglas burden-shifting framework for claims of race or age discrimination. Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is one of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with

PJG

its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets its burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[], but [was] a pretext for discrimination." Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the defendant's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148 (emphasis added). However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof

schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

### 2.     Wilson's Claims

#### a.     Race Discrimination

Because Wilson has not put forth any direct or circumstantial evidence to directly prove her claim of race discrimination, the court will apply the McDonnell Douglas framework to her claims. Assuming for the purpose of this motion that Wilson can meet the *prima facie* test for this claim, as has the defendant, the court finds for the reasons that follow that the defendant has offered legitimate, nondiscriminatory reasons for hiring another candidate over Wilson for this position—*i.e.*, that the other candidate was better qualified. Also, Wilson fails to establish that the defendant's stated reasons for hiring the another candidate was a pretext for race discrimination.

An employer's selection of a more qualified candidate is a legitimate, non-discriminatory reason for rejecting another candidate. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) ("Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision."); see also Sandhu v. Commenwealth of Va., Dep't of Conservation and Recreation, 874 F. Supp. 122, 127 (E.D. Va. Jan. 17, 1995) (finding that, in the context of a failure to hire claim, the "[s]election of a more highly qualified applicant is a non-discriminatory reason for rejecting another applicant") (citing Love v. Alamance Cty. Sch. Bd., 757 F.2d 1504, 1507 (4th Cir. 1985). In assessing relative qualifications, it is based on the criteria that the employer has established as relevant to the position in question.



Heiko v. Colombo Savs. Bank, F.S.B., 434 F.3d 249, 259 (4th Cir. 2006) (discussing pretext in the context of discrimination based on a failure to promote).

> When a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer. But where . . . the plaintiff has made a strong showing that [her] qualifications are demonstrably superior, [s]he has provided sufficient evidence that the employer's explanation may be pretext for discrimination.

Id., 434 F.3d at 261-62.

Wilson, who is black, was not rehired to fill the vacancy created by her participation in the TERI program. The decisions not to retain Wilson and to hire her replacement were made by Cloyd and McDonald, both of whom are white. Through affidavits submitted to the court, Cloyd and McDonald assert Wilson failed to maintain the level of technological proficiency necessary to execute her job duties while certain technological advances changed the manner in which the assessor's office operated. (Cloyd Aff. ¶ 3, ECF No. 65-4 at 2; McDonald Aff. ¶ 3, ECF No. 65-5 at 1-2.) Because of Wilson's lack of technological proficiency, McDonald provided supervisory support in areas that were challenging to Wilson, but McDonald and Cloyd decided that a more qualified person would be needed for the position following Wilson's mandatory separation from employment at the end of her five-year tenure in the TERI program. (Id.) Upon Wilson's separation from employment, her position was advertised. Wilson and Marr, among others, applied for the position. Cloyd and McDonald indicated they did not interview Wilson for the position because they were already familiar with her work, and her minimum salary demand of $45,000 was more than they intended to pay and more than other qualified applicants demanded. (Cloyd Aff. ¶¶ 6-7, ECF No. 65-4 at 3; McDonald Aff. ¶¶ 5-6, ECF No. 65-5 at 3.)



Cloyd and McDonald hired Marr, who is white, after interviewing her and four other candidates. They assert that Marr was more qualified for the position because of her education, technological proficiency, and supervisory experience. (Cloyd Aff. ¶¶ 7-9, ECF No. 65-4 at 4; McDonald Aff. ¶ 3, ECF No. 65-5 at 3.) Marr holds Master's and Bachelor's degrees from the University of South Carolina. (Id.) For the twelve years prior to her hire at the assessor's office she owned and operated her own title abstracting business in Richland County. (Id.) She had previously worked in a supervisory capacity over employees at the Richland County probate court and in a retail sales position. (Id.) Both Cloyd and McDonald assert that race played no role in their decisions. (Id.)

In support of its motion for summary judgment, the defendant argues it has demonstrated a legitimate, nondiscriminatory reason for hiring Marr instead of Wilson via the assertions of Cloyd and McDonald that Marr was more qualified for the position. The defendant also argues that Wilson failed to demonstrate that Marr's qualifications were a pretext for discrimination.

Wilson does not contest Cloyd and McDonald's stated reasons for not rehiring Wilson after she separated from employment, nor does she argue, much less present any evidence, that those reasons were mere pretext for discrimination. Wilson also does not challenge the defendant's assertions that Marr's qualifications were legitimate, non-discriminatory reasons for hiring Marr. Therefore, Wilson has failed to meet her burden of showing that the defendant's purported reasons for not rehiring her were untrue or lacking in credibility. See Evans, 80 F.3d at 960; Heiko, 434 F.3d at 261-32. Based on the evidence in the record, no reasonable jury could conclude that the defendant's failure to rehire Wilson to her former position was discriminatory or that she was the

victim of intentional discrimination based on her race.  See Reeves, 530 U.S. at 148; Merritt, 601 F.3d at 294-95.

### b.     Age Discrimination

Wilson's age discrimination claim against Richland County is brought pursuant to the ADEA.  The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. art. XI.  Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State."  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

The defendant, as a political subdivision of the State of South Carolina, see S.C. Code Ann. § 4-1-10; Cty. of Lexington, S.C. v. City of Columbia, 400 S.E.2d 146 (S.C. 1991), is an arm of the State of South Carolina for Eleventh Amendment purposes.  See Will, 491 U.S. at 70.  Accordingly, it is immune from suit in federal court unless it waives its immunity or Congress abrogates its immunity.  Lapides v. Bd. of Regents, 535 U.S. 613 (2002) (noting that a State may waive sovereign immunity); P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993) (stating that absent waiver of Eleventh Amendment immunity, "neither a State nor agencies acting under its control may be subject to suit in federal court") (quotations and citations omitted); Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001) ("Congress may abrogate the States' Eleventh



Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.' ") (quoting Kimel v. Florida Board of Regents, 528 U.S. 62, 73 (2000)). The defendant has expressly not waived its immunity from suit in federal court. See S.C. Code Ann. § 15-78-20(e) (expressly stating that the State of South Carolina does not waive sovereign immunity from suit in federal court). Nor has Congress validly abrogated the states' immunity from suit for claims based upon the ADEA.[3] See Kimel, 528 U.S. at 91. Accordingly, because Wilson's age discrimination claim is based on the ADEA, the defendant's immunity from suit has not been waived, and Wilson's claim must fail.

## RECOMMENDATION

Based on the foregoing, the court recommends that the defendant's motion for summary judgment be granted. (ECF No. 65.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 14, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[3] By contrast, the Supreme Court has held that Congress abrogated the states' immunity for employment discrimination claims based upon Title VII. See Fitzpatrick v. Bitzer, 427 U.S. 445 (1976).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).